# STATE OF FLORIDA v MATHIAS

## Case No. 89-5322 TC A02

County Court, Palm Beach County

July 25, 1989

### APPEARANCES OF COUNSEL

**Neil Lichtblau,** Assistant State Attorney, for plaintiff.

**Gregg Lerman,** for defendant.

### OPINION OF THE COURT

ROBERT S. SCHWARTZ, County Judge.

THIS MATTER WAS BEFORE THE COURT, pursuant to the Defendant's motion to suppress the results of his breath test due to the failure of the operator to substantially comply with the rules of HRS, and the Court having heard testimony of witnesses, and argument of counsel, hereby denies the motion.

The facts of this case are undisputed and expose a latent ambiguity in a rule promulgated by HRS. The Defendnt was arrested for DUI and gave two breath samples as requested by Deputy Bingham. The

first test indicated a blood/alcohol reading of 0.25% exactly. The second test indicating a reading of 0.23%. Between the two tests, Deputy Bingham did not change the test ampoule. The ampoule is a glass vial used in the Breathalyzers which contain the reagents for determining alcohol content in the Defendant's breath.

The Defendant asserts that this failure to change ampoules is in violation of, what he claims to be, an HRS rule. Thus, he asserts, the test results must be suppressed because the operation of the instrument was not in substantial compliance with a rule of HRS as required by section 316.1932. The rule in question is found in a directive on the Breathalyzer Operational Check List, HRS form 1031. The rule, in pertinent part, states:

" . . . if the BAC reading is less than 0.25% repeat steps number 4 through number 8. If the BAC reading is over 0.25% change the ampoule and repeat steps number 3 through number 8."

The first issue that must be addressed is whether this directive, on the HRS form, is a rule with which there must be substantial compliance.

*State v Humphries,* 25 Fla.Supp.2d 100 (County Ct, 15th Jud. Cir., 1987), is a similar case regarding a different note on the same form. This Court held that the note was a rule within the meaning of Chapter 316.1932 et seq. The ratio decidendum as that section 120.52(15) of the Florida Administrative Procedure Act states, inter alia, that a "Rule" includes in its definition:

" . . . any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule."

This definition, when applied to the directive in question in the case at bar, clearly makes it a rule with which 316.1932 requires substantial compliance.

The next question that must be addressed is whether there was a violation of the rule in question.

The rule contains a latent ambiguity. It instructs the operator what to do if the breath test results is under 0.25% or over 0.25% but not if the reading is exactly .25%.

A general principle of law is that, where possible, an ambiguity is to be resolved against the entity that created it. In this case, HRS, a State agency, drafted the particular rule. Therefore this Court, in interpreting the rule, holds that it requires that where a breath tests reading is

130

0.25% or higher, the test ampoule must be changed before a second test is given.

This interpretation is supported by the testimony of Florida Highway Patrol Trooper R.E. Davis. Trooper Davis is probably the most experienced and credible expert on breath testing in Palm Beach County. He instructed most of the law enforcement officers certified as breath technicians in this area. Davis testified that he instructs his students to change the ampoule if the reading is 0.25% or higher.

The Court, having ruled that there was a violation of an HRS rule, must now determine whether the violation was insubstantial.

This Court, in the case of *State v Hill*, 26 Fla. Supp.2d 82 (County Ct., 15th Jud. Cir., 1987), previously held that the standard to be applied regarding whether there was substantial compliance, is whether the alleged violation prejudiced the Defendant by raising a legitimate question regarding the authenticity or scientific reliability of the test results. This standard finds support in the more recent cases of *Gargone v State*, 503 So.2d 421 (3d DCA 1987) and *Ridgeway v State*, 514 So.2d 418 (1st DCA 1987).

Trooper Davis testified regarding the reason the ampoule is required to be changed where there is an initial test indicating a blood/alcohol level over 0.25%. Davis stated that the ampoule contains a chemical reagent, potassium dichromate, that reacts to the presence of alcohol in the Defendant's breath. The potassium dichromate is partially used up in the first test. However, Trooper Davis further testified that there is a built-in safety factor. According to Davis, there is enough potassium dichromate in each ampoule to react to a combined alcohol content of .7%. In the case at bar there was a combined alcohol content of only .48%. Further, according to Trooper Davis, even if this safety margin didn't exist, the consequence of not having enough reagent for the second test would be to have a breath test result which would indicate a lower blood/alcohol content than the Defendant's actual blood/alcohol content. Davis testified further, that since the Defendant's test results of 0.25% and 0.23% were within the recognized margin of error tolerance of .02% of one another (HRS form 1031) they are deemed to be accurate.

Trooper Davis' testimony stands unrefuted.

In the Court's view, since no prejudice was demonstrated by virtue of the violation, there was substantial compliance with the rules and regulations of HRS pursuant to Florida Statutes.

DONE AND ORDERED in West Palm Beach, Florida, this 25th day of July, 1989.